## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| **DAVID GRIEB**<br>11340 Philadelphia Road<br>White Marsh, MD 21162<br>*Resident of Baltimore County*<br><br>Plaintiff,<br><br>***Individually and on Behalf of All***<br>***Similarly Situated Employees***<br><br>v.<br><br>**EMPTY WAGON PROPERTIES CORP.,**<br>**d/b/a STANDARD AUTO PARTS CORP.**<br>2020 Hollins Ferry Road<br>Baltimore, MD 21230<br><br>Serve: Ronald Sutton, R.A.<br>      2020 Hollins Ferry Road<br>      Baltimore, MD 21230<br><br>Defendant. | Class/Collective Action Claim<br><br><br><br><u>Jury Trial Requested</u><br><br><br><br>Civil Action No.: |

### CLASS AND COLLECTIVE COMPLAINT FOR WAGES OWED

DAVID GRIEB, Plaintiff, by and through his undersigned counsel and The Law Offices of

Peter T. Nicholl, on behalf of himself and all others similarly situated, hereby submits his

Complaint against EMPTY WAGON PROPERTIES CORP., d/b/a STANDARD AUTO PARTS,

Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and

costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C.

§§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable

attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§

3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable

attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

Defendant is in the business of distributing and selling auto parts. Defendant serves repair shops, car dealerships and individual consumers. Defendant serves customers in the Baltimore metropolitan area and owns and operates five (5) stores. Defendant hired Plaintiff and other similarly situated employees to work at its stores. Plaintiff and others similarly situated held various positions. Plaintiff was an assistant manager. Others similarly situated were employed as "part pullers," countermen, cashiers and dispatchers.

Regardless of their title, Defendant failed to properly compensate Plaintiff and others similarly situated for all hours worked. All of Defendant's employees that received an hourly rate were routinely denied compensation. Defendant completed these illegal acts by not paying Plaintiff and others similarly situated for the time they frequently spent working through their breaks.

Plaintiff and other similarly situated employees are typically scheduled to work at least forty-five (45) hours each week. In accordance with Defendant's policies, Plaintiff and others similarly situated are supposed to receive an uninterrupted thirty-minute (30) meal break each day they are scheduled to work. However, various issues often prevented Plaintiff and other employees from taking their breaks. Understaffing was one of the primary issues.

Although Plaintiff and others similarly situated were regularly prevented from taking their breaks, thirty (30) minutes of pay was still deducted from their pay-checks. This occurred on a daily basis. These improper deductions inaccurately reflected that Plaintiff and others similarly situated worked two-and-a-half (2.5) hours less than they actually worked each week. This

prevented Plaintiff and others similarly situated from being compensated correctly for the overtime hours they worked. Defendant was well aware of these illegal practices. Defendant was well aware that Plaintiff and others similarly situated routinely did not take their meal breaks.

Defendant's timekeeping software also deprived Plaintiff and others similarly situated of their wages. The software was programmed to record time in fifteen (15) minute intervals. When clocking employees out, the software would "round down" to the nearest quarter hour. This resulted in Plaintiff and others similarly situated to be consistently denied compensation for the work they performed.

For example, Plaintiff and others similarly were typically scheduled to work until 6:00 p.m. However, certain issues often prevented them from leaving at their scheduled times. If Plaintiff and others similarly situated "clocked out" at 6:14 p.m., due to the fact that the timekeeping software was programmed to record time in fifteen (15) minute intervals, they would not be compensated for the fourteen (14) minutes worked between 6:00 p.m. and 6:14 p.m. Plaintiff and other similarly situated employees would have to stay and work until 6:15 p.m. in order to receive any credit.

Plaintiff and others similarly situated could not always stay and work through the next fifteen (15) minute period. Therefore, they did not receive full compensation. This had the effect of regularly cheating Plaintiff and others similarly situated out of their wages.

These timekeeping practices are implemented at each of Defendant's stores. All of Defendant's hourly employees have been affected by these practices. They have all been denied their wages they rightfully earned.

Through its unlawful timekeeping practices, Defendant evaded the payment of wages owed to Plaintiff and others similarly situated. These practices conflict with the standards set forth by the FLSA, MWHL and the MWPCL. Defendant is currently engaged in this unlawful activity.

## THE PARTIES

1.   Plaintiff David Grieb (hereinafter, "Plaintiff") is an adult resident of Baltimore County, Maryland.

2.   Defendant Empty Wagon Properties Corp., d/b/a Standard Auto Parts, (hereinafter, "Defendant") is an incorporated for-profit business.[1]

3.   Defendant is engaged in the sale and distribution of auto parts.

4.   Defendant serves independent repair shops and new car dealerships.

5.   Defendant owns and operates five (5) stores in the Baltimore metropolitan area.

6.   The addresses for these stores are as follows:

   a.   2020 Hollins Ferry Road, Baltimore, MD 21230;

   b.   1010 W. North Avenue, Baltimore, MD 21217;

   c.   49 New Plant Court, Owings Mills, MD 21117;

   d.   2239 Greenspring Drive, Timonium, MD 21093; and

   e.   7905 Philadelphia Road, Rosedale, MD 21237.

7.   Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL. At all times relevant to this Complaint, Defendant was engaged in the sale and distribution of auto parts.

---

[1] Until January 19, 2017, Defendant was registered with the Maryland State Department of Assessments and Taxation (hereinafter, "SDAT") as Standard Auto Parts Corp. Defendant conducted business under that name as well as Standard Auto Parts. On January 19, 2017, Defendant changed its name to Empty Wagon Properties Corp. Defendant continues to do business as Standard Auto Parts.

8.    Defendant is subject to the FLSA, MWHL and the MWPCL due to the amount in revenues generated. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

9.    From approximately January 1993 until December 26, 2016, Plaintiff was employed with Defendant.

10.    For the relevant period, Plaintiff held the title of assistant manager.

11.    Plaintiff worked at Defendant's Rosedale Store, located at 7905 Philadelphia Road.

12.    At all times relevant to this Complaint, Plaintiff engaged in interstate commerce by the nature of his duties performed as part of his employment with Defendant.

13.    Plaintiff worked for Defendant, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b), and the MWPCL, § 3-501(b).

14.    At all times relevant, Plaintiff and others similarly situated worked as non-exempt employees for Defendant.

15.    At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including the schedules of Plaintiff and other similarly situated employees.

16.    Defendant possessed and exercised authority to determine the hours worked by Plaintiff and other similarly situated employees.

17.    Defendant controlled and supervised the work performed by Plaintiff and others similarly situated.

18.    Defendant was actively engaged in the management and direction of Plaintiff and members of the putative class.

19.     Defendant had the power and authority to change the course of Plaintiff and other similarly situated employees' duties.

20.     Defendant made all decisions relating to Plaintiff and other similarly situated employees' rate and method of pay.

21.     Plaintiff and all those similarly situated recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

22.     Original jurisdiction in this Honorable Court is expressly provided by the FLSA, 29 U.S.C. § 216(b).  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

23.     Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

24.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

25.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

26.     This Honorable Court has personal jurisdiction over Defendant.  Defendant is registered with the Maryland Department of Assessments and Taxation so as to be permitted to conduct business in Maryland.

27.     Defendant also conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

28.     Defendant is in the business of distributing and selling auto parts.

29.     Defendant owns and operates five (5) facilities in the Baltimore metropolitan area.

30.     Defendant primarily serves as an intermediary distributor of auto parts, selling parts to independent repair shops and new-car dealerships.

31.     Defendant also serves individual customers.

32.     Defendant's business centers on large wholesale shipments.

33.     Defendant provides logistical support to customers that would otherwise have to warehouse large quantities of goods.

34.     Defendant maintains and stores these products at its facilities.

35.     Defendant staffs numerous employees at each of its facilities.

36.     Plaintiff and others similarly situated performed duties relating to the operation of Defendant's facilities.

37.     Defendant's employees performed various roles. This includes manning the counters at stores, answering phones, product procurement and coordinating deliveries.

38.     Irrespective of their roles, Defendant's employees were all paid in a similar manner.

39.     Plaintiff and other similarly situated employees were all paid an hourly rate.

40. From approximately January 1993 until December 26, 2016, Plaintiff was employed with Defendant.

41. For the duration of his employment, Plaintiff worked at Defendant's Rosedale, Maryland (hereinafter, "Rosedale") store.

42. During the relevant period, Plaintiff was employed as an assistant manager ("assistant").

43. Plaintiff was one of several assistant managers across Defendant's five (5) stores who had similar duties and responsibilities.

44. Plaintiff and other assistant managers were charged with overseeing the day-to-day operations of Defendant's business.

45. Plaintiff and other assistant managers would routinely open and close Defendant's stores.

46. Plaintiff and other assistant managers were required to assist customers with their orders.

47. Their duties also entailed fielding telephone calls from customers and auto part wholesalers. This was required to coordinate orders for shipment.

48. Included with this task was the requirement to process sales-related paperwork, which included invoices and order forms.

49. Plaintiff and other assistants were also responsible for making sure deliveries were carried out as scheduled.

50. Plaintiff and others similarly situated had to regularly monitor the whereabouts of drivers tasked with delivering the products.

51.     Plaintiff and other assistants had to also maintain records.  They were expected to make note of the frequency and type of sales that were made.

52.     Plaintiff and other assistant managers were required to keep track of the percentage of sales that accounted for wholesale and re-sale items.

53.     Plaintiff and other assistant managers had to aid managers with developing schedules for employees.

54.     They were also responsible for overseeing various employees.

55.     Plaintiff and other assistant managers' tasks included overseeing "parts pullers." During business hours, there were typically two (2) parts pullers at the Rosedale store.

56.     Parts pullers were responsible for obtaining automobile parts for customers.

57.     This was facilitated by invoices distributed to parts pullers at the store counter.

58.     The printouts specified all parts needed to be retrieved for a particular order.

59.     Plaintiff was also responsible for overseeing countermen.  There were usually two (2) countermen staffed at the Rosedale facility.

60.     Countermen were generally tasked with manning the counters.

61.     They had to answer the phones and wait on customers.

62.     They were responsible for answering any questions that a customer had.

63.     They were also responsible for taking customer orders.

64.     Plaintiff also oversaw dispatchers.  There was always at least one (1) dispatcher on duty at the Rosedale store.

65.     Dispatchers were in charge of coordinating product deliveries with drivers.

66.     Dispatchers had to ensure all deliveries were processed in a timely manner.

67.     Due to the volume of Defendant's business, parts pullers, countermen and dispatchers were often unavailable to perform certain tasks.  This resulted from tending to customers or other work related duties.

68.     During periods when parts pullers, countermen and dispatchers were busy, Plaintiff and other assistant managers would have to perform their roles.

69.     They were required to complete any of the duties ordinarily assigned to parts pullers, countermen, or dispatchers.

70.     Defendant's managers enforced this requirement.

71.     Plaintiff and other assistant managers' duties were performed at the discretion of Defendant's managers.

72.     Plaintiff and other assistant managers were supervised by Defendant's managers at all times.

73.     It was routine for a manager to be present at the store.

74.     Plaintiff and other assistant managers had no discretion in the performance of their tasks.

75.     Their duties were always carried out in accordance with Defendant's strict protocols.

76.     Plaintiff and others similarly situated performed their duties to the benefit of Defendant.

77.     Plaintiff and others similarly situated performed their duties to the extent required by Defendant.

78.     Plaintiff and others similarly situated satisfied the requirements of their positions.

79.     For the duration of his employment, Plaintiff was paid weekly.

80.     From approximately December 2013 until August 2014, Plaintiff received weekly payments reflecting a pay rate of approximately fifteen dollars and five cents ($15.05) per hour.

81.     Beginning in approximately August 2014 and through August 2016, Plaintiff's pay rate increased to fifteen dollars and thirty-five cents ($15.35) per hour.

82.     Plaintiff subsequently received another raise. From August 2016 until December 26, 2016, his hourly rate was approximately fifteen dollars and sixty-five cents ($15.65).

83.     Defendant's other employees were paid in the same manner as Plaintiff.

84.     Other assistant managers, parts pullers, countermen, cashiers and dispatchers were all paid by the hour.

85.     Plaintiff was scheduled to work forty-five (45) hours each week.

86.     Plaintiff was scheduled to report to work at 9:00 a.m.

87.     Plaintiff was scheduled to leave work at 6:00 p.m.

88.     Plaintiff's schedule included an unpaid thirty-minute (30) meal break.

89.     He was scheduled to work Mondays, Tuesdays, Wednesdays, Fridays and Saturdays.

90.     Defendant's other employees were required to work similar schedules.

91.     Other assistant managers, parts pullers, countermen, cashiers and dispatchers were also typically scheduled to work at least forty-five (45) hours each week.  Many were scheduled to work more.

92.     Other assistant managers, parts pullers, countermen, cashiers and dispatchers were also supposed to receive an unpaid thirty-minute (30) meal break.

93.     During many pay periods, Plaintiff and others similarly situated worked well over forty-five (45) hours a week.

94.     For the majority of his employment, Plaintiff consistently worked at least forty-five (45) hours per week, exclusive of the daily unpaid thirty-minute (30) break.

95.     It was typical for other assistant managers, parts pullers, countermen, cashiers and dispatchers to also work this many hours.

96.     At times, Plaintiff and other similarly situated employees were required to work even more.[2]

97.     Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers were required to track their work hours.

98.     This was completed through timekeeping software implemented by Defendant.

99.     Pursuant to Defendant's policies, Plaintiff and other similarly situated employees were required to "clock in" at the start of their shifts.

100.    Plaintiff and others similarly situated were also required to "clock out" when their shifts ended.

101.    Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers always used the timekeeping software.

102.    They "clocked in" when they arrived to work and "clocked out" at the time they left.

103.    In accordance with Defendant's policies, Plaintiff and other similarly situated employees should have received a thirty-minute (30) unpaid lunch break.

104.    Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers were supposed to receive this break each day they were scheduled.

---

[2] It was common for Plaintiff to begin his day as early as 7:00 a.m. This was for purposes of completing paperwork related to his position. There were often large volumes of paperwork associated with Defendant's sales.

105. Defendant's timekeeping software was designed to automatically incorporate the thirty-minute (30) meal break into Plaintiff and other similarly situated employees' pay.

106. This was completed by subtracting thirty (30) minutes from the hours the employees worked each day.

107. This was to account for the thirty-minute (30) meal period they were supposed to receive.

108. Plaintiff and other similarly situated employees were not required to "clock in and out" for lunch.

109. The thirty-minute (30) meal break was automatically deducted from their paychecks.

110. Thirty (30) minutes of time was automatically reduced through Defendant's software each day they were scheduled to work.

111. Plaintiff and other similarly situated employees did not always receive their meal break.

112. Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers regularly worked straight through their scheduled breaks.

113. Understaffing was the direct cause of Plaintiff and other similarly situated employees having to continuously work through their breaks.

114. As a result of certain policies, Defendant ensured that certain groups of employees were in fact required to work through their breaks.

115. One such policy was that at least one (1) manager was required to be on the floor at all times.

116. It was common for Defendant to not have a regular manager on duty.

117.    As a result, Plaintiff and other assistant managers had to frequently work through lunch.

118.    This was to ensure that Defendant's policy of always having one (1) manager on the floor was followed.

119.    During the relevant period, there was one (1) manager staffed at the Rosedale store.

120.    It was Defendant's practice to entitle its managers to eighteen (18) vacation days per year.

121.    This resulted in at least eighteen (18) days when there was no regular manager present.

122.    It was Defendant's practice to staff only one (1) assistant manager at its store.

123.    This practice was carried out at the Rosedale location.

124.    As a result, each time that a manager was absent, Plaintiff was required to remain on the sales floor for the entirety of the work day.

125.    Plaintiff had no choice but to work through lunch.

126.    Plaintiff would always have to work through lunch on days that a regular manager was absent.

127.    Due to Defendant's unlawful timekeeping policies, Plaintiff was never compensated for working through lunch on these days.

128.    Thirty (30) minutes of pay was still automatically deducted from Plaintiff's paychecks each day.

129.    The volume of telephone calls that the Rosedale store received also regularly prevented Plaintiff from taking his thirty-minute (30) lunch break.

130. The high volume of calls prevented others similarly situated from taking their breaks as well.

131. The Rosedale store received calls continuously throughout the day from customers and wholesalers.

132. The Rosedale store regularly received as many as two hundred (200) calls a day.

133. The store could receive as many as five hundred (500) calls on a busy day.

134. The length of each call varied. However, it was typical for the calls to last significant lengths of time.

135. It was common for these calls to take longer than expected.

136. This resulted from the numerous questions that customers would raise during the calls.

137. These questions could range from general inquiries regarding the proper function of an auto part, to specific questions regarding the store's inventory.

138. Plaintiff, other assistant managers and countermen were required to take these calls.

139. Having to handle these calls often prevented Plaintiff and others similarly situated from performing their regular duties.

140. Issues pertaining to coverage on Defendant's sales floor required that Plaintiff and other similarly situated employees take these calls.

141. The calls were often received during periods when Plaintiff and others similarly situated were supposed to be on break.

142. It was routine for Plaintiff, other assistant managers and countermen to handle work related calls during break periods.

143.     Defendant's timekeeping policies resulted in Plaintiff and others similarly situated not being paid for these periods.

144.     Defendant's software automatically deducted time during break periods when they were required to handle calls.

145.     Similar violations occurred throughout Plaintiff's employment.

146.     These violations impacted Plaintiff and all members of the putative class.

147.     These violations were also in regard to customer interactions.

148.     Many of Defendant's employees were required to assist with customers.

149.     Plaintiff, other assistant managers and countermen were subject to this requirement.

150.     It was common for multiple customers to be in the Rosedale store at a time.

151.     Plaintiff can recall a number of instances when there were as many as ten (10) to fifteen (15) customers in the store at one time.

152.     Plaintiff and other similarly situated employees were required to tend to the needs of all customers.

153.     Defendant made clear that tending to the needs of customers was a top priority.

154.     This priority often prevented Plaintiff and others similarly situated from taking their scheduled breaks.

155.     There were simply too many customers and not enough employees.

156.     Defendant failed to hire enough staff to cover its busy sales floor.

157.     Understaffing regularly required Plaintiff and others similarly situated to remain on the floor during their scheduled break periods.

158.     Defendant's unlawful timekeeping polices resulted in Plaintiff, other assistant managers, part pullers, countermen, cashiers and dispatchers to not be compensated for these periods.

159.     Their paychecks were still reduced as a matter of course, regardless of whether they received a break.

160.     Thirty (30) minutes of compensable time was still deducted from the time clock daily.

161.     Although understaffing prohibited Plaintiff and other similarly situated employees from taking their scheduled breaks, Defendant would admonish Plaintiff and others similarly situated for eating anywhere other than the designated break area.

162.     Plaintiff, other assistant managers, parts pullers, countermen and dispatchers were all strictly prohibited from taking their meal break on the sales floor.

163.     Plaintiff and other similarly situated employees were forbidden to eat in front of customers.

164.     These restrictions further prevented Plaintiff and others similarly situated from taking their breaks as scheduled.

165.     At times when there were multiple customers on the sales floor, it was often difficult for Plaintiff, other assistant managers, parts pullers, countermen and dispatchers to retreat to the break room during their scheduled breaks.

166.     They had no choice but to remain on the sales floor and continue working.

167.     Defendant's unlawful timekeeping practices resulted in Plaintiff not being compensated for all his time worked.

168.     These same practices also resulted in underpayments to others similarly situated.

169. Plaintiff repeatedly made Defendant aware of the various issues that prevented him and others similarly situated from taking their breaks.

170. Plaintiff often spoke on behalf of other assistant mangers, parts pullers, countermen and dispatchers.

171. Plaintiff repeatedly advised Defendant's managers that he and others were being consistently denied compensation for the additional overtime they worked.

172. Plaintiff made clear that this was the direct result of having to work through meal breaks.

173. Plaintiff regularly complained of these circumstances throughout his employment.

174. Even with Plaintiff's repeated complaints, no action was ever taken to correct the problem.

175. Defendant continued to cheat Plaintiff and others similarly situated out of the time they spent working through their breaks.

176. Defendant also implemented another practice to cheat Plaintiff and others similarly situated out of their pay.

177. This practice also resulted from an automated function of Defendant's timekeeping software.

178. The software was programed to recognize only fifteen (15) minute intervals.

179. This further prevented Plaintiff and others similarly situated from receiving compensation for all hours worked.

180. Although Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers were typically scheduled to work until 6:00 p.m. each day, various issues often prevented them from leaving at their scheduled times.

181.     For instance, Plaintiff and other similarly situated employees were required to finish assisting any customers that were still in the store at the time it closed at 6:00 p.m.

182.     This often required Plaintiff and other similarly situated employees to remain at work well after 6:00 p.m.

183.     Plaintiff and other similarly situated employees also had to ensure that Defendant's store was in proper order for business the following day.

184.     This included replacing any moved or sold merchandise.

185.     This also consisted of balancing the cash register and general cleaning.

186.     When work required Plaintiff and others similarly situated to stay past 6:00 p.m., it was routine for Plaintiff and others similarly situated to not be compensated for their additional time.

187.     This was because Defendant's time-keeping software only credited Plaintiff and other similarly situated employees in fifteen-minute (15) increments.

188.     In order for an employee to be compensated for any time within a particular fifteen-minute (15) period, the employee had to work the full fifteen (15) minutes.

189.     Otherwise, the employee would not receive any credit for his or her time.

190.     For instance, if Plaintiff and others similarly situated were required to stay and work until 6:14 p.m., upon "clocking out" at that time, they would not be compensated for the fourteen (14) minutes worked between 6:00 p.m. and 6:14 p.m.

191.     This was the direct result of the software being programmed to record time in fifteen (15) minute intervals.

192.     Plaintiff and other similarly situated employees would have to stay and work until 6:15 p.m. in order to receive any additional payment past 6:00 p.m.

193.    Plaintiff and others similarly situated did not always stay and work until 6:15 p.m., or the next full fifteen (15) minute period.

194.    This regularly prevented Plaintiff and others similarly situated from being compensated for the additional work they performed.

195.    Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers were repeatedly denied their full wages.

196.    Plaintiff often advised Defendant's managers of these shortcomings.

197.    Once again, these shortcomings were ignored.

198.    These conditions directly resulted in Plaintiff and others similarly situated being consistently denied overtime pay.

199.    Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers regularly worked over forty (40) hours each week.

200.    Defendant's unlawful practices prevented Plaintiff and other similarly situated employees from being paid properly for all hours worked.

201.    Plaintiff and others similarly situated were repeatedly denied compensation for the time they worked through their meal breaks.

202.    Plaintiff and others similarly situated were consistently denied compensation due to Defendant's software failing to record all time worked.

203.    Defendant failed to compensate Plaintiff and other similarly situated employees correctly for their additional hours worked.

204.    Plaintiff and other similarly situated employees should have received overtime pay for their additional work.

205.     Defendant enacted its unlawful practices to evade both Federal and Maryland wage laws.

206.     These practices directly caused Plaintiff and others similarly situated to be paid incorrectly.

207.     They were not compensated at a rate of "time and a half" for all hours worked over forty (40) in a workweek.

208.     There is no bona fide dispute that Plaintiff and others similarly situated are owed overtime wages.

209.     At no time did Plaintiff and other similarly situated employees' duties include work that would make them exempt from the FLSA, MWHL and the MWPCL provisions requiring that they be paid overtime wages.

210.     Plaintiff, other assistant managers, parts pullers, countermen, cashiers and dispatchers were all hourly employees.

211.     This eliminates any argument that Plaintiff and those similarly situated were not entitled to overtime pay.

212.     Defendant was well aware of the overtime hours worked by Plaintiff and others similarly situated.

213.     Defendant's managers were regularly present in Plaintiff and other similarly situated employees' work area.

214.     This includes the sales floor at each of Defendant's stores.

215.     Defendant was well aware of the unlawful timekeeping software at its stores.

216.     Defendant was responsible for implementing this software.

217.     Defendant was well aware that its software prevented Plaintiff and others similarly situated from being paid for all hours worked.

218.     Defendant was aware that its software had the effect of regularly cheating Plaintiff and others similarly situated out of the additional time they worked.

219.     In bad faith, Defendant suffered or permitted Plaintiff and others similarly situated to work this additional time without compensation.

220.     This transpired even after Plaintiff's continued complaints.

221.     Thus, on behalf of himself and other assistant managers, parts pullers, countermen, cashiers and dispatchers, Plaintiff seeks all overtime wages owed.

222.     On behalf of himself and others similarly situated, Plaintiff also seeks all other available relief through this Complaint.

### FLSA COLLECTIVE ACTION ALLEGATIONS

223.     Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated.

224.     "Those similarly situated" include all of Defendant's hourly employees.

225.     Plaintiff and others similarly situated were all subject to the unlawful deductions described in this Complaint.

226.     Plaintiff and other similarly situated employees work or worked as assistant managers, part pullers, countermen, cashiers and dispatchers for Defendant.

227.     These similarly situated employees are all members of the putative collective class.

228.     The FLSA requires employers to compensate non-exempt employees such as Plaintiff and others similarly situated for all hours worked over forty (40) in a workweek.

229. Defendant knew that Plaintiff and similarly situated employees typically worked over forty (40) hours per week.

230. Defendant suffered or permitted Plaintiff and other assistant managers, parts pullers, countermen, cashiers and dispatchers to work more than forty (40) hours per week.

231. Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

232. Defendant failed to compensate Plaintiff and other similarly situated employees correctly for the overtime hours they worked.

233. Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times his regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations.

234. Plaintiff makes these same demands on behalf of all members of the putative collective class.

235. Plaintiff consents to be a party plaintiff in this matter; Plaintiff's consent form is attached to this Complaint as Exhibit A.

236. It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

237. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

238. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

239. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the collective class.

240. Upon information and belief, others will choose to join Plaintiff in this action against Defendant in order to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

241. Plaintiff brings this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure.

242. Plaintiff brings this action on behalf of himself and other current and former employees that served as assistant managers, parts pullers, countermen, cashiers and dispatchers for Defendant and were subject to the following practices and policies:

243. Denial of overtime wages under MWHL for all hours worked over forty (40) in a single workweek; and

244. Denial of all wages owed to Plaintiff and other similarly situated employees at the termination of their employment in violation of the MWPCL.

245. The classes Plaintiff seeks to represent are defined as:

a. *MWHL Class*: All individuals who are or were employed by Defendant as hourly employees, including assistant managers, parts pullers, countermen, cashiers and dispatchers for any period ranging from three (3) years prior to the filing of the instant Complaint to the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek.

b. *MWPCL Class*: All individuals who were, but are no longer, employed by Defendant as hourly employees, including assistant managers, parts pullers,

countermen, cashiers and dispatchers for any period ranging from three (3) years from when the instant Complaint was filed to the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek and thus, did not receive all wages owed to them before the termination of their employment.

246. *Numerosity*: The individuals in the class are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, the class includes dozens of current and former employees who are readily identifiable through Defendant's pay records. These employees were staffed at all of Defendant's stores.

247. *Commonality*: There are questions of law and fact common to the classes. Among the common questions of law and fact applicable to Plaintiff and the classes are:

a.      Whether the MWHL class is similarly situated because they were subject to Defendant's common policy and practice of unlawful automatic deductions;

b.      Whether Defendant employed the MWHL class within the meaning of MWHL;

c.      Whether Defendant violated MWHL by failing to pay Plaintiff and the MWHL class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d.      Whether Defendant's violations were willful;

e.      Whether Defendant employed the MWPCL class within the meaning of the MWPCL;

f.      Whether Defendant failed to provide Plaintiff and other members of the MWPCL class with all wages due at the time their employment ended; and

g.      Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

248.    *Typicality*: Plaintiff's claims are typical of those of the classes. Each and every class member of both the MWHL class and the MWPCL class work or worked as an assistant manager, parts puller, countermen or dispatcher at one or more of Defendant's five (5) stores.  Understaffing required each and every MWHL class member to work through their scheduled breaks without compensation as a result of Defendant's unlawful timekeeping software. The software automatically reduced the time each class member spent working through their breaks. Furthermore, the MWHL class members all utilized the same unlawful timekeeping software.  This software had the effect of reducing the compensable time they worked in fifteen (15) minute intervals.  Defendant also failed to pay Plaintiff and other members of the MWPCL class all wages owed to them at the conclusion of their employment.  This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

249.    *Adequacy*: Plaintiff will fully and adequately protect the interests of the classes.  He seeks the same recovery as the classes, predicated upon the same violations of the law and the same damage theory.  Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions.  Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the classes.

250.    *Predominance*: The common issues of law and fact predominate over any individual issues.  Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one (1) set of facts.  This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's

employment as required by the MWPCL.  Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid.

251.    This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes.  This would establish incompatible standards of conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources.  Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Empty Wagon Properties Corp., d/b/a Standard Auto Parts Corp.*

### Count I - *Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and all Members of the Collective Class Who, During the Course of This Matter, Opt-In to This Lawsuit*

252.    Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

253.    Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

254.    As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiff for these additional hours.

255.    Defendant willfully and intentionally failed to compensate Plaintiff for the overtime wages he is owed.

256.     There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

257.     Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for the hours he worked in excess of forty (40) in a workweek at a rate of one and one-half (1.5) times his regular hourly wage rate.

258.     All members of the putative Collective class were subject to the same violations of the FLSA and thereby entitled to the same relief as described in this Complaint, which are herein restated on behalf of the putative collective class members.

***Count II.  Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff, All Those that are Joined as a Party in This Matter, and All Members of the MWHL Class***

259.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

260.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

261.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under Md. Code Ann., Lab. & Empl. § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

262.     Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

263.     Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages he is owed.

264.     There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

265. Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times his regular hourly wage rate.

266. All members of the MWHL class and added parties were subject to the same violations of MWHL and thereby entitled to the same relief as described in this Complaint, which are herein restated on behalf of the putative MWHL class members and any added parties.

### *Count III - Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Employment to Plaintiff, All Those that are Joined as a Party, and All Members of the MWCPL Class*

267. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

268. Plaintiff is entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501, *et. seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

269. Plaintiff has not received compensation from Defendant for all wages owed for work performed before the termination of his employment as required by Md. Code Ann., Lab. & Empl. §3-505(a). This is specific to Defendant's failure to pay Plaintiff the overtime wages to which he is entitled.

270. Defendant willfully and intentionally did not compensate Plaintiff for the wages owed to him and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

271. Under the MWPCL, there is no bona fide dispute that Plaintiff is owed wages for work performed while employed by Defendant.

272. All members of the MWPCL class and added parties were subject to the same violations of MWPCL and thereby entitled to the same relief as described in this Complaint, which are herein restated on behalf of the putative MWPCL class members and any added parties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, prays for the following relief:

a)      In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b)      In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a class action on behalf of Plaintiff and members of the classes certified by motion during the course of this litigation;

c)      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

d)      Designating the named Plaintiff to act as a class representative on behalf of all similarly situated employees for the FLSA collective class;

e)      Designating the named Plaintiff to act as a class representative on behalf of all members of the classes certified during the course of this litigation;

f)      Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

g)      Judgment against Defendant for its failure to pay Plaintiff and members of the MWHL class in accordance with the standards set forth by MWHL;

h)      Judgment against Defendant for its failure to pay Plaintiff, those appropriately joined to this matter and all members of the MWPCL class in accordance with the standards set forth by the MWPCL;

i)      Judgment against Defendant and classifying its conduct as willful and not in good faith;

j)      Judgment against Defendant and classifying Plaintiff, the collective class, those appropriately joined in this matter and members of all classes certified as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

k) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff, those similarly situated and members of all classes certified, calculated at a rate that is not less than one and a half (1.5) times Plaintiff's, all other similarly situated employees' and members of all certified classes' regular hourly rate for all overtime hours worked;

l) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff, those similarly situated and members of all classes certified during the course of this litigation, whichever is deemed just and equitable by this Honorable Court;

m) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

n) Leave to add additional plaintiffs to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

o) All further relief deemed just and equitable by this Honorable Court.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III (29774)
bdavis@nicholllaw.com
George E. Swegman (26972)
gswegman@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*